[J-57-2023] [MO: Todd, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 102 MAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court dated April 5, 2022 |
| | : | at No. 446 MDA 2021 Affirming the |
| v. | : | Judgment of Sentence of the |
| | : | Wyoming County Court of Common |
| | : | Pleas, Criminal Division, dated |
| PHILLIP DONALD WALTERS, | : | December 10, 2020 at No. CP-66- |
| | : | CR-0000058-2019. |
| Appellant | : | |
| | : | ARGUED:  October 18, 2023 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE DOUGHERTY**                    **DECIDED:  September 23, 2024**

I respectfully concur in part and dissent in part.  Specifically, I agree that since "Dr. Ross'[s] testimony regarding [the victim's] cause of death was not based on any objective medical findings, it did not meet the standard for admissibility, and should not have been admitted at trial."  Majority Opinion at 19 (emphasis omitted).  I stress, however, that this conclusion flows directly from the unique factual record before us — more precisely, from Dr. Ross's candid "acknowledg[ment] that he was unable [to] discern any trauma to [the victim's] neck because the tissue, cartilage, and organs in her neck and head were missing."  *Id*. at 18; *see id*. at 18-19 ("Dr. Ross repeatedly conceded that there was no physical evidence to support his conclusion that [the victim] was strangled[.]") (emphasis omitted).  Given Dr. Ross's admissions, it is apparent his conclusion regarding the cause of death was not, as the Commonwealth argues, "based on both historical data as well as objective findings through autopsy and the process of elimination[.]"  Commonwealth's

Brief at 13.  Instead, "the only basis for his opinion in this regard were Bell's statements." Majority Opinion at 19.  I therefore agree with the majority that Dr. Ross's expert opinion that the victim's cause of death was strangulation was not offered within a reasonable degree of medical certainly and should have been excluded at trial.

Nevertheless, it is important to reiterate what the Court does not resolve today: "the extent to which an expert may rely on case history in formulating his or her opinion as to cause of death[.]"  *Id*.  On this particular question, I agree with Justice Wecht's view that a "forensic pathologist must consider all available information in formulating an opinion" regarding a victim's cause and manner of death, and this "necessarily includes the 'history' of a case."  Concurring Opinion at 5; *see* Pa.R.E. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").  Notably, when asked at trial whether it was "common in your practice to utilize information provided by the police in reaching your conclusions[,]" Dr. Ross testified in the affirmative,[1] explaining that

> the circumstances surrounding every case are critical in order to understand what's happened.  For instance, somebody could be shot in the head and that could be an accident.  It could be a suicide or it could be a homicide. And just from examination of the body alone I may not be able to determine that.
>
> But the circumstances surrounding that might give me evidence to support the fact that it may be a homicide or a suicide or an accident.  And [in] every case the information surrounding the death is critical.

---

[1] The majority asserts "the information 'utilized' by Dr. Ross to reach his conclusion was not provided by the police."  Majority Opinion at 19 n.13.  Although it is true the relevant information came from Bell, it was the police who gave that information to Dr. Ross.  *See* N.T. Trial, 10/26/20, at 14 (defense counsel asserting "the only way [Dr. Ross] got that information was through the police").

N.T. Trial, 10/26/20, at 17. As I understand it, the majority does not cast doubt on this longstanding practice by medical experts or reject the "process of elimination" method when used alongside case history. It merely holds (1) as a factual matter, that Dr. Ross's "opinion as to [the victim]'s cause of death was not based on the process of elimination" method, Majority Opinion at 23, and, (2) as a legal matter, "that an expert's opinion cannot be based **solely** on case history[.]" *Id*. at 19 (emphasis in original). *See* Concurring Opinion at 8 ("There is an important difference between using 'history' as a factor in ascertaining the cause of a person's death and using it as the only factor.") (emphasis omitted). On those limited points I agree.

However, I cannot join the majority's holding that Dr. Ross's testimony regarding the victim's cause of death "impermissibly encroached on the jury's determination of Bell's credibility." Majority Opinion at 21. The reason is simple: this issue of allegedly improper bolstering is waived.

Prior to trial, appellant filed a motion in limine in which he plainly raised the first issue discussed above. *See* Motion In Limine, 10/22/19, at ¶40 ("it is clear that the 'Cause of Death' identified as 'Strangulation (By History)' is a statement unsupported to a reasonable medical certainty and, as such, has no place on a report purporting to be an independent medical examination"). The trial court denied appellant's motion in limine on November 8, 2019, thereby preserving that issue for appeal. *See Commonwealth v. Stevenson*, __ A.3d __, 2024 WL 3490768 (Pa. July 22, 2024) ("Rule 103 explicitly provides that: (1) '[a] party may claim error in a ruling to admit . . . evidence' when a party, *inter alia*, 'makes a . . . motion *in limine*;' and (2) 'a party need not renew an objection . . . to preserve a claim of error for appeal' once a trial court 'rules definitively on the record.'"), *quoting* Pa.R.E. 103(a)(1)(A), (b).

But the same cannot be said of the bolstering claim upon which the majority now grants appellant a new trial. Nowhere in his motion in limine did appellant use the word bolster or otherwise raise an argument along those lines. Nor did he raise any objection on that ground at trial. The first time he raised such an argument was in his post-sentence motion. *See* Post-Sentence Motion, 12/21/20, at ¶4 ("By permitting Dr. Ross to testify to a non-medical factual conclusion that the alleged cause of death of [the victim] was by strangulation, Dr. Ross's testimony also constituted an improper bolstering of the testimony of Gabel Bell on the same subject."). That was too late. *See Commonwealth v. Yandamuri*, 159 A.3d 503, 528 n.23 (Pa. 2017) (bolstering claim waived where appellant "failed to demonstrate where in the record he preserved his claim and our independent review discloses no contemporaneous objection"), *citing* Pa.R.A.P. 2119(e) (requiring an appellant to identify where in the record he preserved an issue for appellate review); *Commonwealth v. Sanchez*, 82 A.3d 943, 969-70 (Pa. 2013) (where objection at trial "was not offered on the basis of improper bolstering," bolstering claim waived on appeal; bolstering "objection must be specific and brought to the trial judge's attention as soon as is practical"); Pa.R.E. 103 (to preserve claim of error in a ruling to admit evidence a party must, on the record, "make[ ] a timely objection" and "state[ ] the specific ground, unless it was apparent from the context"); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[2]

---

[2] In his brief, appellant claims this "issue was preserved in a pretrial motion filed on October 22, 2019, in his argument during trial, (N.T. [Trial], 10/26/20, [at] 13-16), and in post-sentence motions filed on December 21, 2020." Appellant's Brief at 24. But, as discussed above, no bolstering claim can be found in appellant's motion in limine. As for his citation to the trial record, it also reveals no bolstering claim. Instead, within the cited passage appellant only "objected to certain portions of [Dr. Ross's] report coming in as evidence **because they constitute hearsay**." N.T. Trial, 10/26/20, at 13 (emphasis added); *see also* N.T. Trial, 10/20/20, at 35 (arguing Dr. Ross's reference to strangulation "by history" "is to that extent hearsay"). A hearsay claim is obviously distinct from a bolstering claim, and the preservation of one does not suffice to preserve the other.

Admittedly, the Commonwealth does not argue appellant waived his bolstering claim. But "[t]his Court may raise the issue of waiver *sua sponte*." *Commonwealth v. Edmondson*, 718 A.2d 751, 752 n.7 (Pa. 1998) (citation omitted); *see Commonwealth v. Hines*, 336 A.2d 280, 282 n.3 (Pa. 1975) ("While the question of waiver has not been raised by any party to this litigation, this Court may affirm an order if it is correct for any reason."). I would do so here.[3] Significantly, had appellant raised his bolstering claim prior to or at trial rather than in a post-sentence motion, the trial court may have precluded Dr. Ross from testifying in the manner he did, or issued a limiting instruction, blunting any prejudice stemming from the testimony. Neither happened, however, because appellant waited until he was convicted and sentenced to raise the issue for the first time. Under these circumstances, where the Commonwealth was the appellee below and in this Court, I would enforce the waiver as to appellant's bolstering claim. *See Commonwealth v. Katze*, 658 A.2d 345, 349 (Pa. 1995) (opinion divided on other grounds) ("There is a general rule that issues not raised in the lower court may not be addressed on appeal; however, this rule is applicable only to appellants.").

Even if the Court had some good reason for overlooking the waiver problem, I still would be compelled to dissent from the majority's disposition. The majority concludes

---

[3] Although we may raise waiver *sua sponte*, we are not required to do so, and sometimes there are good reasons to decline. *See Commonwealth v. Wolfel*, 233 A.3d 784, 790, 790 n.5 (Pa. 2020) (concluding the Commonwealth's waiver argument was waived where it was advanced for the first time on appeal, with the Commonwealth in the position of appellant), *citing Commonwealth v. Williams*, 141 A.3d 440, 464 n.23 (Pa. 2016) (same); *In re Estate of Plance*, 175 A.3d 249, 270 (Pa. 2017) ("the instant case falls within the class of circumstances in which this Court will undertake merits review of issues that may have been deemed to be waived, because an opposing party failed to advance a waiver contention before the appropriate court"); *Sanchez*, 82 A.3d at 972 n.10 ("as the Commonwealth has 'waived the waiver' in these instances, we will proceed to a merits disposition of those claims because we see substantive review as the most efficient manner of resolving the questions raised").

that "Dr. Ross indisputably placed his imprimatur on Bell's testimony." Majority Opinion at 21. The problem with this theory is that appellant disclaimed it at trial. During closing argument, defense counsel forcefully argued Bell's "story was never corroborated." N.T. Trial, 10/26/20, at 145. Counsel then specifically discussed how Dr. Ross "testified that there was no evidence that [the victim] was the subject of strangulation." *Id*. at 149; *see id*. ("Dr. Ross did attempt to testify that [the victim]'s cause of death was listed as strangulation by history which is a short form way of saying that [he] did [ ] not have any evidence of strangulation but he could not rule it out."). Indeed, defense counsel made it a point to highlight all the ways in which Dr. Ross's testimony undercut Bell's testimony. *See id*. at 134, 149. Yet, almost four years later, this Court now holds that, not only did Dr. Ross corroborate Bell's testimony, he "improperly bolstered" it to the point of requiring a new trial on all charges, even ones that could not possibly have been impacted by Dr. Ross's testimony concerning the cause of death, like abuse of a corpse.[4] Respectfully, I think the decision to award appellant a new trial on all charges based on an unpreserved issue where he expressly proclaimed the opposite view before the jury is improper. *See generally Vicari v. Spiegel*, 989 A.2d 1277, 1290 (Pa. 2010) (Saylor, J., concurring) (explaining that, although the overlooking of waiver "to dispose of [a] salient interpretive legal question on the merits can be justified as a salutary measure undertaken to provide guidance to the bench and bar," such holdings "should be applied prospectively only, and only to parties that have preserved the issue"). Consequently, I am compelled to dissent in part.

---

[4] *See* N.T. Trial, 10/26/20, at 195 (instructing the jury that to find appellant guilty of abuse of a corpse, "you must find beyond a reasonable doubt that [appellant] treated the corpse of [the victim] in a way that he knew would outrage ordinary family sensibilities and in this case by dumping the corpse — by allegedly dumping the corpse in the Susquehanna River"); *see also* N.T. Hearing on Post-Sentence Motions, 1/27/21, at 15 (defense counsel arguing the jury "relied upon [Dr. Ross]'s testimony to find [appellant] guilty of First Degree Murder and Strangulation" but making no argument about abuse of a corpse).